SOUTH HAMPTON *v.* FOWLER.

The declarations of one in possession of real estate are competent to rebut
a title set up by or under the person who made them, and are also
affirmative evidence of title in the party for whom the person in posses-
sion declares that he holds it.

Evidence as to pedigree is confined to the declarations of relatives of the
family.

The declarations of a party's ancestor, since deceased, not in possession,
nor claiming title to the premises in question, as to the occupancy or
ownership of the premises, are inadmissible.

In an action of trespass *quare clausum*, if the jury return a special verdict
that the title to that part of the premises described in the declaration
upon which the trespass complained of was committed was in the de-
fendant, he will be entitled to a general verdict.

The plaintiffs claimed that the unoccupied lands within the original
limits of the town of S. became originally the property of the
town, the plaintiffs claiming title through the town to the *locus
in quo*. *Held*, that to rebut this claim it was admissible for the
defendant to read in evidence extracts from the town records that cer-
tain other unoccupied lands were owned by commoners, and to read
from said records the lists of certain persons designated as commoners
or proprietors, and as such entitled to certain lands, some of said extracts
having no reference to the *locus in quo*, as admissions by the town that
the title to the lands in dispute was in the commoners under whom the
defendant claimed.

When the jury return an informal verdict, the answer of the foreman to
inquiries by the court as to what they intended to include in their ver-
dict, made in presence of the whole panel and without objection from any
juror, will be taken as the answer of the jury.

TRESPASS, *quare clausum.*

This is the case reported 52 N. H. 225.

The title to the land described in the writ being in dispute, it ap-
peared that one Thomas Souther for a long time occupied a small
portion of the described premises, and lived in a small house near the
south-western part thereof: it was claimed by the defendant that
Souther held under the license and permission of an ancestor of the
defendant. (1) The plaintiffs offered to prove that Souther is long
since dead, and that while upon the premises and living there, he made
declarations that he held under the plaintiffs, and denied the rights of
the defendant's ancestor; but said offer was overruled. (2) The de-
fendant, against the objection of the plaintiffs, was permitted to put in

the testimony of Eben Fowler, Oliver Eaton, and Richard Fowler, to the effect that one Jacob Fowler, now dead, declared to them that he was the grandson of one Samuel Getchell, and that said Getchell (who the defendant claimed was a commoner of Salisbury, within the limits of which town, as anciently constituted, the premises were located, and as such an owner, in common with others, of the premises) settled and lived on the premises; and the defendant was permitted in like manner to put in the testimony of Richard Fowler, the defendant, that the said Jacob Fowler once pointed out a place upon the premises, and said it was the place where they told him that his ancestor, Samuel Getchell, lived. (3) The plaintiffs claimed that the *locus in quo* was until 1740 part of the town of Salisbury in Massachusetts, and offered evidence of the laws of Massachusetts tending to show that by the incorporation of that town the unoccupied land within its limits became the property of the town. The defendant·claimed that the same land belonged to certain persons, called commoners or proprietors, of Salisbury; and, to prove that, was, against the objection of the plaintiffs, permitted to read in evidence, from the town records, extracts showing the assignment of certain other common lands in Salisbury to about sixty individuals in common, and to read from said records lists of certain persons designated as commoners or proprietors, and, as such, entitled to certain lands, some of said extracts having no reference to the *locus in quo*. (4) The close described in the writ is a large tract of land, bounded on the north by Hampton river, east by the ocean, south by the state line, and west by the Blackwater river, embracing about one and a half miles in length of sea-coast, and extending back about half a mile to the marshes upon the margin of the Blackwater. The plaintiffs offered evidence tending to show title in themselves to the whole close. The trespass complained of was the erection of two small buildings (A & B) by the defendant, on the eastern border of the premises, near the ocean. The defendant offered evidence tending to show title or an undivided interest in the whole premises in himself as a descendant of one Jacob Fowler. He offered evidence, also, that Jacob Fowler enclosed by a fence much the greater portion of the premises in dispute, and held the same adversely. The fence enclosing this large portion of the premises was described in general terms by the defendant's witnesses as extending more than a mile in length along the western border by the marshes, and as running towards but not as far as the sea at the north and south ends, there being no fence on the easterly margin of the premises in dispute.

The defendant admitted that the buildings concerning which the dispute is were not enclosed otherwise than by the before-mentioned fence, which was at a considerable distance from the same.

The following chalk will sufficiently illustrate the situation of the premises.· The dotted lines represent the fence, A B the buildings, the erection and maintenance of which constitute the alleged trespass.

The plans and chalks used on the trial may be used in argument.

The jury returned the following verdict, signed by their foreman:
"The jury find a verdict in favor of establishing Richard Fowler's
claim to his large enclosure, and allowing South Hampton to hold a
claim to the remainder." Whereupon the plaintiffs moved that a gen-
eral verdict be entered in their favor. But the court inquired of the
foreman whether or not the jury intended to include the place occupied
by the buildings of Jacob Fowler as being within the large enclosure;
and the foreman, without any consultation with his fellows (who were
present and expressed no dissent), answered in the affirmative. Where-
upon the court directed a general verdict of not guilty to be entered,
which was then reduced to form and signed by the foreman; to all
which the plaintiffs excepted. The questions of law thus raised were
reserved.

*Hatch*, for the plaintiffs.

*Frink* and *Goodall*, for the defendant.

IsAAC W. SMITH, J.   The possession of Souther, unexplained, would
have been evidence of title in himself. In the absence of proof to the
contrary, he would be presumed to hold and claim for himself. But
his declaration, accompanying the act of possession, shows that he held

not for himself but for the plaintiffs. Such declarations are not only competent to rebut a title set up by or under the party who made them, but are affirmative evidence of title in the party for whom the person in possession declares that he holds it. *Bradley* v. *Spofford*, 23 N. H. 446, and authorities cited; *Putnam* v. *Osgood*, 52 N. H. 151, and authorities cited. Such declarations are held admissible as part of the *res gestæ. Bell* v. *Woodward*, 46 N. H. 315; 1 Gr. Ev., sec. 109.

The case finds that the land described in the writ was in dispute, which means that the whole close was in dispute. It is not clear whether Souther occupied any part of the premises within the fence, but assuming that he did not, as claimed by the defendant in argument, yet it appears that at the trial the defendant claimed that Souther held under the license and permission of the defendant's ancestor. The defendant's position is, that his ancestor under whom he claims was seized of the whole close described in the writ, as well that part without as within the fence, and that Souther occupied as tenant of his ancestor. The plaintiffs also claimed the whole close. Souther's declarations, which the plaintiffs offered to show, had a direct bearing upon the title of the defendant; for Souther denied the title of the defendant's ancestor to so much of the premises as he occupied, and the character of Souther's occupation bore upon the question of the defendant's ancestor's title to the premises of which Souther occupied a part. We think the evidence was wrongfully excluded.

2. The case finds that the defendant offered evidence tending to show title or an undivided interest in the whole premises in himself as a defendant of one Jacob Fowler. The fact of the descent of Richard Fowler from Jacob Fowler being first established, it was then competent to admit the declarations of Jacob Fowler, now dead, that he was the grandson of Samuel Getchell. 1 Gr. Ev., sec. 103, 104; *Waldron* v. *Tuttle*, 4 N. H. 371; *Mooers* v. *Bunker*, 29 N. H. 432; *Emerson* v. *White*, 29 N. H. 482; *Johnson* v. *Lawson*, 2 Big. 86.

But the declarations of Jacob Fowler that his grandfather, Samuel Getchell, once lived upon the premises, should have been excluded. It is nothing but hearsay testimony. It does not appear that Jacob Fowler ever had any personal knowledge that Getchell lived upon the premises, nor even that he got his information from Getchell or any other member of the family; nor does it appear that Jacob Fowler ever was in possession of the premises, except so far as the same may be inferred from the claim set up by the defendant of title by descent from Getchell. Declarations made by a person in possession against his interest are admissible, and assuming that Jacob Fowler was in possession at the time he made these declarations, they are declarations made in his own favor, in support of his title, of which his possession was only *prima facie* evidence, and they do not therefore come within any rule recognized in the books for the admission of such statements; and we think they should have been excluded.

3. The plaintiffs claimed that the unoccupied lands within the original limits of Salisbury became by the laws of Massachusetts the prop-

erty of the town.   The plaintiffs claimed, through Salisbury, to own the *locus in quo*.   To rebut this claim of the plaintiffs, it was competent for the defendant to show that Salisbury did not claim to own the unoccupied land, and the extracts from the town records, read in evidence to the jury, were admissible as admissions by the town that these unoccupied lands were owned by commoners.   It was competent for the defendant to show that other common lands than the *locus in quo* had been assigned to commoners or proprietors, as tending to show how the common lands in that town were owned and occupied, or, in other words, as showing an admission by the town that the title to these lands was in the commoners.

4. This is not a writ of entry, but is trespass.   The alleged trespass is the erection and maintenance of buildings marked A B on the plan. As the jury, by their verdict, found that part of the close described in the writ on which the buildings were located belonged to the defendant, the defendant was entitled to a verdict of not guilty.   There was no evidence that he had trespassed upon that part of the close which the jury found belonged to the plaintiffs.

It was proper for the court to inquire of the foreman whether the jury included the place occupied by Fowler's buildings within the large enclosure mentioned in their informal verdict, and the affirmative answer of the foreman must be taken to be the answer of the whole panel in the absence of any expression of dissent by his fellows.   He only undertook to make known to the court, when inquired of, the result they had reached in the jury room, but had failed to express distinctly in their informal verdict.

But for error in ruling upon the first two questions presented in this case, the verdict must be set aside and

*A new trial granted.*