<sup></sup>Aug. 11,
1876. }                       TYLER v. FLANDERS.

*Evidence.*

In an action against selectmen for a malicious and fraudulent over-valuation and taxation of property, the defendants were permitted to prove the discussions which they had at the time of the appraisal, as tending to show that their action was honest.

Where the jury returned a verdict in favor of the defendant on the first count, and disagreed on the second, the two counts being for distinct matters—*Held*, that another trial might be had on the other count, and such final judgment rendered as the case required.

Hearsay, in regard to the birthplace of a deceased person, is not admissible, unless it comes from the relatives of such person.

Evidence of what a deceased person had said having been offered, evidence of different declarations at other times was held to be admissible.

FROM COÖS CIRCUIT COURT.

CASE against the defendants,—Hiram D. Flanders, Erastus Hibbard,

and Otis Young,—as selectmen of Stewartstown, for fraudulently and maliciously raising the valuation of the plaintiff's farm from $1,500 to $2,000, in April, 1871; and, at the same time, fraudulently and maliciously taxing a horse to the plaintiff which he did not own. Trial at the February term, 1873, of the Supreme Judicial Court, before FOSTER, J., and a jury.

The declaration contains a count in trover for the conversion of the plaintiff's mare, of the value of $125. Plea, the general issue. Writ dated January 22, 1872.

Subject to the plaintiff's exception, the defendant Young testified that he first suggested to the other selectmen the idea of raising the plaintiff's invoice from $1,500 to $2,000. "We talked the matter over of raising the plaintiff's farm, and thought it ought to be raised. Taking into account the amount of stock which the plaintiff kept on his farm, and comparing it with other farms in town, we thought the former appraisal too low." The plaintiff offered to show that the horse, which he claimed was wrongfully taxed to him, was appraised at $100 by the selectmen of Stewartstown in 1872, the defendant Young being one of the board, while in 1871 the same horse was appraised at $150. The court excluded the evidence, and the plaintiff excepted.

The defendants' testimony tended to show that they increased the valuation of the plaintiff's farm in good faith, honestly, and according to their best judgment. The plaintiff's evidence was in conflict with this. Much testimony was introduced on both sides in regard to the value of the plaintiff's farm, and in regard to the value of other farms appraised by the defendants, which was of a contradictory character, the plaintiff's witnesses giving evidence tending to show that the valuation of the plaintiff's farm was excessive as compared with others, and the defendants giving evidence the other way.

In regard to the horse, the plaintiff's evidence tended to show that it belonged to one Jeffers, a minor, and that the defendant Flanders, who alone took a list of the plaintiff's personal property, agreed to tax it to Jeffers.

The defendant Flanders's testimony tended to show that the horse was in the plaintiff's possession at the time, had previously been owned by the plaintiff, and that he and Jeffers consented to have it taxed to the plaintiff. Both the other selectmen testified that when the invoice was made they supposed the plaintiff owned the horse. All the defendants testified that they appraised the Jeffers horse to the plaintiff, honestly and in good faith. The plaintiff requested the court to charge the jury as follows:

1. That one selectman cannot make examination and appraise property. The tax-payer is entitled to the judgment of at least two members of the board in the examination and appraisal of his property.

2. That if the jury find that the plaintiff duly gave to the selectmen, or either of them, on notice or request, a legal list of his poll and property subject to taxation, then the defendants could not change the same except by dooming him.

(The plaintiff's other requests related to the count in trover, upon which the jury disagreed, and hence are now immaterial.)

The court denied these requests unless they were granted in the charge of the court, which, in substance, was as follows:

The duty of the selectmen is, to appraise all taxable property at its full and true value in money. In order to ascertain that value, they may call on the owner for an account under oath, but they are not obliged to do so. They may collectively examine his property, but it is not to be inferred that they are guilty of neglect or fraud because *all* have not examined. It is to be presumed that they have competent evidence from which they make their invoice.

In the discharge of their duty, the selectmen are not liable to anybody for any mere error of judgment. Their honest appraisal is conclusive, so far as they are concerned; and if the tax-payer is aggrieved thereby, he may apply to the selectmen or to the court for an abatement of his taxes, and show the error. So, also, he may apply for an abatement in case of fraud. But if the selectmen have wantonly and maliciously affixed a valuation upon his taxable property greater than its value really was in their own judgment, they are liable to an action for damages. Upon the question whether the appraisal is malicious or not, the evidence of the appraisal by them of other real estate (of corresponding kind and value) may be considered. Therefore, the plaintiff may show (1) the *value* of other real estate in the same town taxed by them; (2) the *appraisal* of this other real estate by them.

If the jury should be of the opinion that other real estate taxed by them was appraised at a much lower rate in proportion to its real value than the plaintiff's was, they may consider that fact as bearing upon the question whether the selectmen acted in good faith in the appraisal of the plaintiff's real estate. The presumption is, that they acted in good faith, and appraised the plaintiff's property, and all other property of other persons, according to their honest estimation of its value; and this presumption the plaintiff must overcome before he can charge them with acting maliciously. Therefore the presumption is, that, in placing the value of $2,000 as that of the plaintiff's real estate, they acted honestly; and if so, although in your judgment it was of less value, that can make no difference. No matter how erroneous their honest judgment may be, they are not chargeable for any error in judgment.

So, in making comparisons with other real estate taxed by them, the presumption is, they estimated its value in good faith; and even if they taxed a piece of real estate as of less value than the plaintiff's, when in your opinion such real estate was of greater value than the plaintiff's, still if they acted honestly, though in your opinion they erred very greatly in their judgment, they will be protected.

All this evidence as to the actual value and the appraised value of the plaintiff's property and the property of others is competent; but it cannot operate against the defendants, unless, upon careful discrimination by you, it shall be apparent to you that they undertook, wilfully

and maliciously, to oppress the plaintiff by appraising his property at a price disproportionate to their own belief of its true value.

If it should appear, upon comparison of their appraisals of property, that a discrimination had been exercised against the plaintiff, whereby they had taxed him at a rate disproportionate to the taxation of other persons upon property of similar value, you may inquire, Why was this discrimination made ? Was it made in the exercise of an honest judgment ? If so, they are to be protected, though their judgment may differ from your own. Was it made for the purpose of oppressing the plaintiff, in bad faith and maliciously, and *not* in the exercise of an honest judgment ? If so, the defendants are liable. The defendants might properly tax the horse to the plaintiff, if they acted in good faith, believing they had the right so to tax it. But if informed and persuaded in their own belief that the horse was not the plaintiff's, or if they promised not to tax it to him but to Jeffers, and then did tax it to the plaintiff, the evidence is competent as tending to show malice, and the defendants may be liable. If Tyler assented to the taxing of this horse to him instead of the Jeffers boy, the selectmen had a right to do so, and the plaintiff cannot complain. If the selectmen, or a majority of them, believed they had a right to tax the colt to Tyler when they did it, because it was in Tyler's possession, then the plaintiff cannot recover in this action on account of the Jeffers colt. The selectmen had a right to tax the colt to Tyler if the colt was to remain Tyler's property till paid for, or if Tyler was to winter the colt through and deliver it in the spring at the price of $120 to the Jeffers boy. The selectmen had the right to tax the colt to Tyler, no matter who owned it, having found it in his possession, if they honestly believed they had a legal right to do so.

The mere fact that the defendants did not give the plaintiff notice that they were going to raise his valuation, furnishes of itself no evidence of malice. The jury may find all the defendants not guilty, or one, two, or all of them guilty, according as the evidence bears on your minds. If one, or two, of the defendants, from ill-will, bad faith, or malice, persuaded another who had no such motive, but whose honest judgment was persuaded by the fraudulent design of the other or others, he may be innocent and the rest guilty.

The jury found a special verdict on the first count for the defendants, and disagreed on the count in trover. The plaintiff's counsel objected to the rendition of any special verdict on the first count, and moved to set the same aside. The court overruled the objection, and denied the motion; to which the plaintiff excepted. These exceptions were ordered to await the result of another trial on the count in trover, and then be transferred, with any question which might arise on that trial.

At the August term, 1874, of the circuit court, there was a trial upon the second count, before LADD, J., and a jury. The only question upon this count was, whether or not Erastus Hibbard, one of the defendants, when he was elected selectman, in March, 1871, and during the time

he acted as such, was a citizen of the United States, or an alien. It was conceded that he was born in Hereford, in Canada, but it was in dispute whether his father, Joel Hibbard, was born in Canada, or in the United States; and this was the only matter tried at the last mentioned term.

Subject to exception, the plaintiff's counsel read the following questions and answers from Sterling Hibbard's deposition, he being an older brother of said Joel:

*Int. 10.* How old were you when your parents moved to Hereford, Canada, if you know?

*Ans.* I can't remember; I was so young that I can't remember.

*Int. 11.* Did you ever hear your parents say,—and if so, what did they say about it?

*Ans.* Well, I have understood—I don't know as I understood from them in particular—that I was about three years old.

*Int. 12.* Whom did you understand this from?

*Ans.* Well, I can't say; I could not, for my life.

*Int. 23.* State whether or not you have ever stated to any one that you was three years of age when your folks moved to Hereford.

*Ans.* Well, I presume I have, for that was the way I always understood it; but I don't know it for a certainty, but that is the way I have always understood it.

The following question and answer in the deposition of Lebbeus Hall were admitted, with a direction by the court that the evidence should be considered by them in case they were of opinion that the declaration referred to was made before the assessment of the tax in question, otherwise not. The defendants excepted. Mrs. Hall was an older sister of Joel Hibbard.

*Int. 13.* State whether or not you ever heard your wife, while living, say where Joel was born.

*Ans.* I think that but a few years before she died I heard her say that he was born in Hereford. It was since they had this fuss with Erastus.

The defendants offered to show, by the testimony of John M. Hilliard, Gad Beecher, and Edwin W. Drew, the declarations of said deceased, wife of said Hall, made after the assessment of said tax in 1871, in substance, that her brother Joel was born in Columbia, N. H., and not in Canada. Upon objection by the plaintiff's counsel, the court excluded this evidence, and the defendants excepted.

Erastus Hibbard was a witness for the defendants. Timothy Workman, a witness called by the plaintiff, was allowed to testify, subject to exception by the defendants, that said Erastus Hibbard, when riding with the witness in said Hereford, in the spring of 1869, pointed out a certain place in said Hereford, and said,—"There is the place where my father was born."

The defendants offered to prove that said Erastus had voted in said Stewartstown for eighteen years without objection. The court excluded this evidence, and the defendants excepted.

Subject to the defendants' exception, the plaintiff's counsel read in evidence a conveyance from one Luther Hibbard to Samuel Harvey, dated September 3, 1806, and recorded September 8, 1806, conveying the farm in Columbia, where the father of said Joel Hibbard resided while he lived in said town. The execution of said deed was not proved, but Samuel M. Harvey, son of the grantee, testified that he found this deed among the papers of his father, who had deceased. The phrase, " I, Luther Hibbard, late of Cockburne," &c., was alone to be used as evidence that Luther Hibbard, the father of said Joel, at the date of this deed had moved away from said Columbia, which was formerly called Cockburne. It appeared that said Samuel Harvey occupied said farm for many years after September, 1806 ; that said Hibbard moved from Columbia when said Harvey moved there ; and that said Hibbard never lived on any other place in Columbia after he sold to Harvey.

Subject to the defendants' exception, the plaintiff's counsel read in evidence a conveyance purporting to be made by Luther Hibbard to Nathan Beecher, dated May 9, 1807. Said deed was not recorded, and the execution of it was not proved. It purported to convey a tract of land on Indian Stream, and contains the phrase, " I, Luther Hibbard, of a place called and known by the name of Indian Stream," &c., which was allowed to be used as evidence that Luther Hibbard, the father of said Joel, resided at said Indian Stream at said date. It was proved that this deed was found among the papers of Nathan Beecher, who was deceased.

The court, on the trial, submitted the special question to the jury, as to whether or not Joel Hibbard, the father of Erastus Hibbard, one of the defendants, was born in Canada ; and the jury found that he was. The questions raised upon the trial were transferred to this court.

*Aldrich & Shurtleff* and *Geo. A. Bingham*, for the plaintiff.

*Ray, Drew & Heywood, Dudley*, and *H. A. Fletcher*, for the defendants.

CUSHING, C. J. In this case, at the first trial, there was a verdict for the defendants on the first count, and the jury did not agree on the second. The only exceptions, therefore, are those made by the plaintiff to the matters in evidence relating to the first count. The gist of this count was the malicious over-valuation of the property. It was necessary to show that it was over-valued, and that the over-valuation was malicious. To rebut any evidence of malice, it was competent for the defendants to show by the defendant Young the circumstances under which the valuation was raised, what took place at the time, and the circumstances attending it. The exception to this evidence must be overruled.

The evidence offered tending to show an over-valuation of the horse was properly rejected, because such over-valuation was not complained of.

The first request to charge the jury was rightly refused. The evidence as reported does not tend to show that a single selectman undertook to appraise the property. Flanders undertook to do just what, in *Gordon* v. *Norris*, 29 N. H. 198, it is said that one selectman may do, viz., to make an application for an account of taxable property.

As to the second request, it does not appear to me, from the evidence reported, that there was anything for it to apply to. I do not understand, from the evidence reported, that there was any question as to any neglect or refusal to give an account, or any wilful omission of any property; but the question appears to have been about the appraisal of it, which, as I understand the statute, is for the selectmen to do after the list has been given them. I do not understand that any part of the charge was excepted to, nor do I see anything exceptionable.

The two counts in the declaration were in fact entirely distinct. The gist of the action in the first count was the malicious over-appraisal; while, on the second count, the question would be whether the horse had or had not been legally taxed. The counts were so far distinct that the jury might have found for the plaintiff on one and the defendant on the other, and in such case they might have returned a special verdict on each count, at their pleasure, according to the *dictum* in *Walker* v. *Sawyer*, 13 N. H. 191. It having been decided in *Lisbon* v. *Lyman*, 49 N. H. 553, that a new trial may be granted on a part of a case only, it seems to follow conclusively that the jury might return their special verdict on that count on which they had been able to agree. There must, therefore, be judgment on the verdict on the first count.

It appears that at the trial which afterwards took place on the second count, the matters in dispute were finally reduced down to the single point, whether the father of Erastus Hibbard was born in Canada or not. On this question the evidence of Sterling Hibbard was excepted to. The evidence of Sterling Hibbard was offered for the purpose of showing that Joel Hibbard, the defendant's father, was born in Canada. It was hearsay testimony, and was open to several objections. In *Eastman* v. *Martin*, 19 N. H. 152, it was held that the hearsay, in order to be admissible, must be shown to be what was said by relatives and members of the family. Where the witness could not refer the hearsay to deceased relatives, it was held to be inadmissible. So, in *Emerson* v. *White*, 29 N. H. 490, it is said by BELL, J., speaking of the facts testified to by the witness,—" They might have been derived from other sources, and, unless derived from relatives, evidence of this kind is not admissible." In *Albertson* v. *Robeson*, 1 Dall. 9, evidence of what a brother of a plaintiff heard their father and their mother say in relation to the plaintiff's age is inadmissible. In *Brooks* v. *Clay*, 3 A. K. Marsh. (Ky.) *545, it was held that hearsay evidence of the place of birth of a party is inadmissible. So in *Shearer* v. *Clay*, 1 Litt. (Ky.) 260, *Wilmington* v. *Burlington*, 4 Pick. 174, and *Robinson* v. *Blakely*, 4 Rich. 586. In *Rex* v. *Erith*, 8 East 539, it was held that evidence of the declaration of a deceased father, of the place of birth of a pauper, is inadmissible. The evidence of Sterling Hibbard, objected to, was, I think, quite too vague

and uncertain to be admitted ; and if it were not for this objection, the authorities cited seem to be otherwise conclusive against the evidence.

If the wife of Lebbeus Hall had been alive at the time of the trial, and had testified that her brother was born in Hereford, she might have been contradicted by showing that she had at another time made a different statement; and I cannot see why her testimony, not given under oath, should not be contradicted in the same way. It is true that the evidence seems to make it nearly certain that the statements of Mrs. Hall were made after the controversy arose ; and perhaps the court might with propriety have found that fact, and ruled out the evidence without submitting anything to the jury. But this court cannot assume to determine how the jury found that fact, and can only determine the law on the supposition that there was something for the jury to consider which might have been found either way. The statement being before the jury would have been quite likely to produce its effect, and I think, therefore, that the bane and antidote should have gone together. It appears to me that this ruling was incorrect.

The evidence, that Erastus Hibbard had for twenty years voted in Stewartstown without objection, was, I think, rightly excluded. For these reasons it appears to me that this verdict ought to be set aside.

SMITH, J. 1. It was competent for the defendants to show the circumstances under which they assessed the plaintiff's property. They were charged with having fraudulently and maliciously raised his valuation. Evidence tending to show that the valuation was raised in good faith was plainly admissible, and the testimony of Young clearly tended in that direction.

2. The declaration alleges that the defendants fraudulently and maliciously raised the valuation of the plaintiff's farm, and also fraudulently and maliciously taxed a horse to the plaintiff which he did not own. It is not one of the plaintiff's grievances that the horse was over-valued. It was not then material at what value he was appraised in 1872, as no complaint is made that he was not appraised too high in 1871. Showing what the horse was appraised at in 1872 would have some tendency to show his value in 1871. But during the year the value of this horse, or the value of horses generally, may have increased or depreciated. The fact that the selectmen of 1872, one only of whom acted as such in 1871, appraised the horse at two thirds of the value at which he was appraised by the board of 1871, would hardly have any tendency to show that the board of 1871 acted fraudulently or maliciously. The presumption is, that each board acted honestly, until the presumption is removed by evidence. No two boards of officers would be generally expected to appraise property at exactly the same value, even at the same time. The fact that the board of 1872 appraised the horse lower than their predecessors, had no tendency to show that the board of 1871 did not act with the same honest intention. With the same propriety it might be argued that the fact that the appraisal of the board of 1871 differed from that of the board of 1872 shows that the latter

board acted in bad faith. One board was as likely to be right as the other.

3. There was no state of facts that called for the first instructions requested. It appears that all three of the selectmen united in making the appraisal of the farm. Flanders, alone, took the list of the plaintiff's personal property, but it does not appear that the whole board did not unite in the appraisal. The evidence upon which an appraisal may be made may consist of a view and personal examination of the property, or of such other evidence as may be accessible to the assessors. But it is not important in this case how the appraisal was made,— whether by Flanders alone, and his judgment accepted by the others, or by an examination by the whole board; for the complaint is, that the horse was not taxable to the plaintiff—not that he was overvalued.

4. Neither were there any facts that called for the second instructions requested. There is no evidence reported from which the jury could infer that the plaintiff gave to the selectmen, or either of them, a list of his property subject to taxation, or that the defendants undertook to doom the plaintiff. The instructions, therefore, were properly refused.

5. The testimony of Sterling Hibbard was only hearsay, and was improperly received. It does not appear that he got his information from his parents or other members of the family. Declarations as to pedigree are admissible, but they are confined to declarations made by relatives of the family. *So. Hampton* v. *Fowler*, 54 N. H. 197.

6. The reception of Lebbeus Hall's deposition presents a question upon which the authorities are not agreed. According to the English authorities, hearsay evidence is admissible to prove pedigree, but not the place of one's birth. The reason of the distinction is said to be, that where a person is treated as a child for many years, that is rather a course of conduct than a simple declaration showing relationship; whereas the question of birthplace presents a distinct fact. This reason, however, is not altogether satisfactory. *Wilmington* v. *Burlington*, 4 Pick. 174.

The term pedigree, as defined in 1 Gr. Ev., sec. 104, embraces not only descent and relationship, but also the facts of birth, marriage, and death, and the times when these events happened. And in note 1 the author adds,—" In a recent case this doctrine has been thought to warrant the admission of declarations made by a deceased person as to where his family came from, where he came from, and of what place his father was designated. *Shields* v. *Boucher*, 1 DeGex & Smale 40."

Our attention has not been called to any case in our own reports in point. The weight of authority appears to be against the admission of such testimony. See authorities cited by the chief-justice, *supra.* If the deposition was properly received, it would seem competent for the defendants to contradict the statements of Mrs. Hall, and for that purpose the testimony of Hilliard, Beecher, and Drew should have been received.

7. The testimony of Workman conflicted with the position of the defendants. Erastus Hibbard claimed that he was a citizen, because, although born in Canada, his father was born in the United States. Evidence that he ever claimed or stated that his father was born in Canada tended to contradict him, and was therefore admissible.

8. No reason has been assigned why evidence that Erastus Hibbard had voted for eighteen years in Stewartstown could be received.

9. The deeds of Luther Hibbard to Harvey and to Beecher were properly admitted. 1 Gr. Ev., sec. 104. Evidence of this character is different from the mere verbal declaration of a person as to his residence. "The designation of his residence in a solemn instrument, such as a deed or a will, is in the nature of a fact rather than a declaration, being made when there was no controversy, and when no possible interest could exist to give a false designation." *Ward* v. *Oxford*, 8 Pick. 476.

\* STANLEY, J., C. C. I agree that the verdict on the second count should be set aside and a new trial granted.

*New trial on the second count.*